**Mary Virginia SWARTZ, Appellant–
Respondent,**

v.

**John P. SWARTZ, Mary F. Fader, and
Margaret H. Swartz, Appellees–
Petitioners.**

**No. 71A03–9906–CV–244.**

Court of Appeals of Indiana.

Dec. 20, 1999.

**1220**

Sean P. Hilgendorf, South Bend, Indiana, Attorney for Appellant.

William L. Wilson, James P. Knepp, Hahn, Walz and Knepp, South Bend, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

Mary Virginia Swartz (Mother) appeals the trial court's decision granting visitation to paternal grandparents John P. Swartz and Mary F. Fader, and paternal great-grandmother Margaret H. Swartz (Grandparents), raising several issues for review. We consider the following issues, which we find dispositive:

I. Whether the trial court abused its discretion in setting the times and conditions of visitation.

II. Whether the trial court erred in ordering Mother to pay Grandparents' attorney's fee to have their attorney attend an interview with the Domestic Relations Counseling Bureau

We reverse.

## FACTS AND PROCEDURAL HISTORY

Mother and Daniel Joseph Swartz (Father) were married on April 19, 1985. The couple had one child, C.S., who was born on June 20, 1990. Father served in the United States Air Force and was stationed at different places in the United States. The family lived together during this time. In 1992, Father was stationed in Korea and was unable to take dependents with him. Mother and C.S. moved back to South Bend, Indiana, where the couple's

families lived. During the time that Mother and C.S. lived in South Bend, Grandparents visited C.S. frequently and developed a good relationship with both Mother and C.S. In June 1993, Father returned from Korea, and Mother and C.S. rejoined him in North Dakota. In the fall of 1994, however, Mother and C.S. moved back to South Bend. Mother filed a petition to dissolve her marriage on September 6, 1994. Mother and Father entered an agreed settlement with regard to property division and the custody and support of C.S. Father was awarded reasonable visitation with C.S.

Grandparents continued to exercise visitation with C.S., attended her school functions, and enjoyed activities with her. Mother permitted Grandparents to visit C.S. any time they requested, but refused to allow Grandparents unsupervised or overnight visitation.

In August 1997, Grandparents filed a petition with the court seeking scheduled, unsupervised, overnight visitation. During the pendency of this action, Mother agreed to allow Grandparents to have unsupervised visitation with C.S. during the day at any time. She continued, however, to refuse overnight visitation. After the initial hearing, the trial court ordered the parties to submit to interviews by the Domestic Relations Counseling Bureau (DRCB). The trial court asked the DRCB to prepare a recommendation about visitation and to propose a visitation schedule. A DRCB caseworker did so, and after a hearing, the trial court adopted the caseworker's recommendation. The trial court awarded Grandparents visitation with C.S. every other weekend, alternating among Grandparents' three households.[1] In addition, each grandparent was granted one week of visitation during the summer, during which he or she could take C.S. to visit Father, who lives in North Dakota. Mother now appeals.

## DISCUSSION AND DECISION

### I. Visitation Award

 Mother asserts that the trial court abused its discretion in granting such extensive visitation with Grandparents. The Indiana Grandparent's Visitation Act provides that under certain circumstances, a court may award visitation rights to a grandparent where doing so is in the best interests of the child. IC 31–17–5–1; 31–17–5–2. The determination of the best interests of the child is committed to the sound discretion of the trial court and will be reversed on appeal only upon a showing of an abuse of that discretion. *Kennedy v. Kennedy*, 688 N.E.2d 1264, 1267 (Ind.Ct.App.1997), *trans. denied.* An abuse of discretion exists where the trial court's decision is clearly against the logic and effects of the facts and circumstances before the trial court or the reasonable, probable deductions to be drawn therefrom. *Id.* We will not reweigh the evidence or judge the credibility of the witnesses. *Id.*

Grandparent visitation statutes are a legislative recognition that a child's best interest is often served by developing and maintaining contact with his or her grandparents. *See id.* at 1268. "Grandparents are members of the extended family whom society recognizes as playing an important role in the lives of their grandchildren, the importance of which has been given added meaning by the legislature's policy judgment underlying the Act." *Sightes v. Barker*, 684 N.E.2d 224, 230 (Ind.Ct.App. 1997), *trans. denied.* The legislature designed the Act to promote intergenerational contact and strengthen the bonds of the extended family in an era that has witnessed the disintegration of the nuclear family in an effort to provide an alternative or supplementary source of family support for children. *Id.* at 231. Grand-

---

1. John P. Swartz, C.S.'s paternal grandfather, and Mary F. Fader, C.S.'s paternal grand-

mother, are divorced. Both are remarried.

1222 ■

parents, however, do not have the legal rights or obligations of parents.

■ Parents have a constitutionally recognized fundamental right to control the upbringing, education, and religious training of their children. *See, e.g., Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). By contrast, Grandparents do not possess a constitutional liberty interest in visitation with their grandchildren. *Kennedy,* 688 N.E.2d at 1268. When drafting the Grandparent Visitation Act, the legislature had to balance two competing interests: the rights of parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren. *Lockhart v. Lockhart,* 603 N.E.2d 864, 866 (Ind.Ct. App.1992). "It has long been recognized in our traditions and collective conscience that parents have the right to raise their children as they see fit." *Id.* Visitation rights conferred by the Act are not a substantial infringement on the parent's fundamental rights because the Act only contemplates occasional, temporary visitation as found to be in the best interest of the child. *Sightes,* 684 N.E.2d at 230.

■ In this case, the trial court awarded visitation on alternating weekends, fashioning a phase-in period of day-long visitation, then increasing to overnight visitation. The adoption of this schedule means that C.S. will be living among four different households on alternating weekends. This arrangement runs counter to the goal of providing C.S. with the stability or "supplementary" family support for which Grandparent Visitation was designed. Further, because of the visitation schedule of alternating weekends, the trial court's order prohibited Mother from involving C.S. in any activities that would take place on Grandparents' weekends without first consulting with and receiving permission from them. The effect of this order is to allow three people to have a veto power over all continuing weekend activities in which C.S. might participate, a decision which would normally be left to

Mother. In addition to alternating weekends, each grandparent was awarded one week of visitation during the summer. Therefore, in total, C.S., a nine-year-old girl, would live outside of her Mother's home seventy-three days per year. This arrangement would fundamentally alter the relationship between Mother and C.S., which by all accounts was close, healthy, and loving. The trial court abused its discretion in awarding such substantial visitation to the paternal grandparents. This schedule, akin to that devised for non-custodial parents, has C.S. being shuttled among households and outside of Mother's care for a substantial period of time. This visitation is complicated by the possibility that Father may also exercise his visitation rights at any time. We commend Grandparents for taking such a keen interest in C.S.'s welfare and appreciate C.S.'s good fortune in having so many people care about her. However, we cannot agree that this disruptive schedule, which includes so many people and households, is in C.S.'s best interests.

Our conclusion in this case is bolstered by the fact that Mother has never denied Grandparents access to C.S., and all parties have had a good relationship. While we agree that the Act applies in such cases, we note that the interest at stake is different. Here, the Grandparents are not pursuing the right to have a relationship with C.S., but the right to have the type of visitation they want. In essence, they were not satisfied with the terms of the visitation dictated by Mother, C.S.'s parent. In fact, Mother agreed to allow Grandparents unlimited, unsupervised visitation. Grandparents, however, pressed for the right to have C.S. spend the night in their homes, against Mother's wishes. We do not believe that this provides a more meaningful opportunity to visit with C.S. than Mother's proposal of open, unsupervised access to C.S. or that pursuing the issue, rather than working with an apparently agreeable Mother, was in C.S.'s best interest. The trial court abused its

discretion in determining that Grandparents were entitled to regular, overnight visitation. Grandparents have essentially been given the visitation rights of parent in lieu of their son and grandson, Father, with no corresponding duties. The trial court abused its discretion in setting visitation. *See Sanders v. Sanders*, 452 N.E.2d 1057, 1059 (Ind.Ct.App.1983) (not an abuse of discretion to award less visitation than requested by grandmother where grandmother's request would tend to encroach upon all of the children's weekends, holidays, and summers).

## II. Attorney's Fees

Mother next contends that the trial court erred in ordering her to pay the fee for Grandparents' attorney to attend an interview of Mother by the DRCB caseworker. The decision to award attorney's fees and the amount of the award are reviewed for an abuse of discretion. *Mitchell v. Mitchell*, 695 N.E.2d 920, 924 (Ind.1998). Indiana follows the American Rule which ordinarily requires each party to pay their own attorney's fees. *Salcedo v. Toepp*, 696 N.E.2d 426, 435 (Ind.Ct.App. 1998). Generally, attorney's fees are not recoverable from the opposing party as costs, damages, or otherwise, in the absence of an agreement between the parties, statutory authority, or rule to the contrary. *City of Hammond v. Marina Entertainment Complex, Inc.*, 681 N.E.2d 1139, 1142 (Ind.Ct.App.1997), *trans. denied.*

In this case, the trial court ordered Mother to submit to an interview by the DRCB caseworker. Mother refused unless she could be accompanied by counsel. The trial court agreed to allow Mother's attorney to attend the interview provided that Grandparents' attorney also be permitted to attend, with Mother paying the fee charged for such attendance. The trial court did not identify a statutory basis for its award, nor do we find any statute applicable under these circumstances. Further, there was no agreement by the parties that Mother would pay the fee. We hold that the trial court abused its discretion in ordering Mother to pay Grandparents' attorney's fee.

Reversed.

SHARPNACK, C.J., and RILEY, J., concur.