**Christina (Frey) McCUNE,**
**Appellant–Respondent,**

**v.**

**Terry and Carolyn FREY,**
**Appellees–Petitioners.**

No. 40A05–0209–CV–449.

Court of Appeals of Indiana.

Feb. 20, 2003.

Jennifer A. Joas, Williams Joas & Stotts Madison, IN, Attorney for Appellant.

Mike Carter, Scottsburg, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

Terry and Carolyn Frey ("the Freys") filed a petition for grandparent visitation in Jennings Circuit Court requesting a set visitation schedule with their grandson, B.F. Christina McCune ("Christina"), B.F.'s mother, filed a response to the petition stating that she discontinued visitation with the Freys for the safety of her child after B.F. alleged that Terry Frey abused him.

After holding a hearing on the petition and reviewing the Court Appointed Special Advocate's ("CASA") report, the trial court granted the petition and awarded the Freys visitation with B.F. on the first Sunday of each month between the hours of 1:00 p.m. and 6:00 p.m. Christina appeals and raises two issues, which we restate as:

I.   Whether the trial court abused its discretion when it granted the Freys' petition for visitation because the court failed to determine that visitation was in B.F.'s best interests and failed to enter findings of fact and conclusions of law; and,

II.  Whether the Grandparent Visitation Act is unconstitutional.

Because the trial court failed to issue findings of fact and conclusions of law as required under the Grandparent Visitation Act, we remand this case to the trial court for proceedings consistent with this opinion.

### Facts and Procedural History

B.F. was born to Christina and Christopher Frey ("Chris") on December 24, 1995,

and after his birth, Christina, who was fourteen years old, and Chris, who was nineteen years old, were married. During the marriage, Christina had a good relationship with Chris's parents, the Freys, and the Freys saw B.F. on a regular basis.

In March, 1998, Christina's and Chris's marriage was dissolved in Jennings Superior Court. Christina and Chris agreed to share joint custody of B.F. with Christina having primary physical custody. Chris was awarded visitation with B.F. every weekend and the visitation was to take place in the Freys' home. After the marriage was dissolved, the Freys continued to have a good relationship with B.F. and had more contact with B.F. than Chris. The Freys maintained a relationship with B.F. independent of Chris, and Christina agrees that the Freys played a significant role in B.F.'s life.

On or about January 26, 2001, Christina observed that B.F. began acting as if he were afraid to go to the Freys' home for visitation. On March 2, 2001, B.F. finally told Christina that he was afraid to go with the Freys because Terry Frey had "hit him in the balls." Tr. p. 56. Several weeks later, Christina discussed B.F.'s allegation with Carolyn Frey,[1] and visitation with the Freys ceased after the allegation was made. However, Christina did take B.F. to Terry Frey's birthday party in April, 2001. The Freys also attended B.F.'s kindergarten graduation ceremony at his school in May, 2001.

On May 18, 2001, Christina filed a petition to modify Chris's visitation in Jennings Superior Court because she no longer wanted the Freys to supervise Chris's visitation with B.F. In July, 2001, a CASA was appointed to investigate the matter and prepare a written report. Soon there-

after, the Freys filed a petition for grandparent visitation in Jennings Circuit Court. In her response to the Freys' petition, Christina requested that her petition to modify Chris's visitation be joined and consolidated with the Freys' petition for grandparent visitation, and that a hearing should not be held on the Freys' petition until the CASA report was completed. The trial court denied her request to consolidate, but agreed to wait for completion of the CASA report before holding a hearing on the petition.

A hearing was held on August 19, 2002. At the hearing, Carolyn Frey testified that she has never seen Terry exhibit anger towards B.F. or touch B.F. in an inappropriate manner. Terry Frey stated that he has never struck B.F., disciplined him, or spanked him. Both testified that after the allegation was made, B.F. never acted as if he were afraid of Terry, and at Terry's birthday party, B.F. gave each of them a hug. Carolyn Frey also testified that Chris brought B.F. to their house on June 9, 2002, and that B.F. acted normal, hugged Terry, and had a conversation with him. However, after that visit, B.F. alleged that Terry had kicked him in the testicles again. Finally, both Carolyn and Terry were asked if they would be willing to have visitation with B.F. in Christina's home, and both replied that they would not be willing to do so.

Christina testified that B.F. has made consistent allegations of abuse on more than one occasion. Christina indicated that she would not have denied visitation if B.F. had never made the allegations. She also stated that if she were present for visitation, she could ensure that B.F. was safe and that B.F. would likely feel safer

---

1. After her conversation with Carolyn Frey, Christina contacted Child Protective Services and took B.F. to the hospital for an examina-

tion, but the examination did not reveal any injury to B.F.

as well. Also, she acknowledged that it would be uncomfortable for her to have the Freys visit B.F. in her home, but she "would be willing to do it to try to come to some type of agreement." Tr. p. 66. Christina testified that the Freys were welcome to attend B.F.'s school and sporting events because she would also be present. She also stated that B.F. was in counseling, and the Freys indicated that they would participate in counseling if they approved of the counselor.

The CASA report was also admitted into evidence. The CASA interviewed B.F., Christina, Chris, the Freys, Christina's husband and parents, and B.F.'s school counselor. Based on these interviews, the CASA recommended that B.F. should continue to see the Freys, but to put Christina's fear to rest, Terry Frey should "not be left alone with [B.F.] at any time." Ex. Vol., Petitioner's Ex. 1. The CASA also recommended that weekend visits at the Freys' home remain as stated in the divorce decree, but Terry Frey should not be left alone with B.F. at any time during visitation. *Id.* Finally, after the hearing, the trial court conducted an in-camera interview with B.F.

On September 6, 2002, the trial court issued the following order:

ORDERED that Petitioners, Terry Frey and Carolyn Frey, Grandparents herein, shall be awarded the following grandparent visitation rights in regard to their grandson [B.F.], to wit:

1.) Commencing on September 8, 2002, grandparents shall have visitation rights with their grandson from the hours of 1:00 o'clock p.m. to 6:00 o'clock p.m. Grandparents shall have visitation with [B.F.] from 1:00 p.m. to 6:00 p.m. on the first Sunday of each month thereafter. If the first Sunday of the month falls on a weekend when Ms. McCune has custody of [B.F.], then the grandparents' visitation shall be on the second Sunday of the month.

2.) During the visitation periods for the months of September, October, November and December of 2002, Dr. Terry Frey and Carolyn Frey must both be present at all times during the visitation. Commencing January 5, 2003, there shall be no such restriction that both grandparents be present at the same time during the visitation periods.

3.) Grandparents shall provide all transportation to exercise their visitation so long as all parties reside in Jennings County, Indiana, or its surrounding counties.

4.) The Grandparents shall have additional grandparent visitation rights on each December 23rd, and each Grandparent's Day, from 1:00 o'clock p.m. to 6:00 o'clock p.m., commencing September 8, 2002.

5.) Each party shall pay their own attorney fees and costs herein.

Appellant's App. pp. 6–7. Christina now appeals.

**Discussion and Decision**

As an initial matter, we note that by enacting the Grandparent Visitation Act, our General Assembly has recognized that "a child's best interest is often served by developing and maintaining contact with his or her grandparents." *Swartz v. Swartz*, 720 N.E.2d 1219, 1221 (Ind.Ct. App.1999). However, grandparents "do not have the legal rights or obligations of parents," and "do not possess a constitutional liberty interest in visitation with their grandchildren." *Id.* at 1221–22. (citations omitted). In constrast, parents do have a "constitutionally recognized fundamental right to control the upbringing, education, and religious training of their

children." *Id.* Furthermore, in "our traditions and collective conscience," we have acknowledged that parents "have the right to raise their children as they see fit." *Id.* Therefore, when it drafted the Grandparent Visitation Act, our General Assembly had to balance two competing interests: "the rights of parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren." *Id.* (citing *Lockhart v. Lockhart*, 603 N.E.2d 864, 866 (Ind.Ct. App.1992)).

Pursuant to the Act, a grandparent may seek visitation only if the 1) the child's parent is deceased; 2) the child's parents are divorced; or 3) the child was born out of wedlock, but only if the child's father has established paternity. Ind.Code § 31–17–5–1 (1998). The trial court may grant a grandparent's petition for visitation if it determines that visitation is in the best interests of the child. Ind.Code § 31–17–5–2 (1998). Additionally, a trial court may modify an order granting or denying grandparent visitation rights any time such modification would serve the best interests of the child. Ind.Code § 31–17–5–7 (1998).

## I. Findings of Fact and Conclusions of Law

■ Christina argues that the trial court abused its discretion when it granted the Freys' petition for visitation. Specifically, Christina contends that the trial court abused its discretion because the court failed to find that grandparent visitation was in the best interests of B.F. and failed to issue findings of fact and conclusions of law. In support of her argument, Christina notes that Indiana Code section 31–17–5–6 provides: "[u]pon hearing evidence in support of and opposition to a petition filed under this chapter, *the court*

shall enter a decree setting forth the court's findings and conclusions." Ind. Code § 31–17–5–6 (1998) (emphasis added).

The Freys argue that Christina failed to request special findings of fact and conclusions of law under Indiana Trial Rule 52, and the trial court was not required to enter findings of fact and conclusions of law where no such request was made. In support of their argument, the Freys rely on *Sanders v. Sanders*, 452 N.E.2d 1057 (Ind.Ct.App.1983).[2] In *Sanders*, although the grandmother was granted visitation rights, she appealed and argued that pursuant to Trial Rule 52(A)(3) and the Grandparent Visitation Act, the trial court was required to issue special findings of fact and conclusions of law. *Id.* at 1058. Trial Rule 52(A)(3) provides that in a case tried without a jury, the trial court, upon its own motion or a party's motion, "shall find the facts specially and state its conclusions thereon." However, the trial court is required to make special findings of fact without request "in any other case provided by these rules or by statute." Ind. Trial Rule 52(A)(3).

Our court determined that although there were no special findings of fact and conclusions of law entered by the trial court, under the circumstances in *Sanders* we were able to fully understand the basis of the trial court's decision, and it was not necessary to remand the case to the trial court. *Sanders*, 452 N.E.2d at 1058. We stated:

*We are of the opinion that the statutory language is sufficiently clear to require compliance by the trial court with T.R. 52(A)(3).* However, the purpose of special findings of fact and conclusions of law is to provide the reviewing court

2. We note that the Grandparent Visitation Act was recodified in 1997, but the statutory language at issue is identical to the statute upon which our court based its decision in *Sanders*.

with the legal basis upon which the decision was reached. There is no mandate in that the trial judge must state how or why he found and concluded as he did. The only statutory factors necessary to invoke the court's discretion are (1) dissolution of marriage; and (2) that such visitation would be in the best interests of the child. Factor number (1) was implicit in the proceeding and factor number (2) was found specifically by the court. These questions were resolved in favor of Grandmother.... Any relief which we would grant upon this issue would be in the form of a remand to the trial court with instructions to enter more specific findings and conclusions. However, such proceedings would be unnecessary and burdensome, and not in the interest of judicial economy. Grandmother cannot complain now of a favorable result of the grant of visitation privileges.

*Id.* at 1058–59 (emphasis added) (internal citations omitted). Therefore, our court essentially concluded that under the Grandparent Visitation Act and Trial Rule 52(A)(3), the trial court is required to issue findings of fact and conclusions of law when issuing a decree granting or denying grandparent visitation.

■ As we noted above, "[t]he purpose of findings of fact and conclusions of law is to provide the parties and reviewing courts with the theory upon which the case was decided." *F.E.H., Jr. v. State,* 715 N.E.2d 1272, 1275 (Ind.Ct.App.1999). It is important for parties and the reviewing court to have a clear understanding of how and why the trial court made its decision. It is particularly imperative in a grandparent visitation case because of the tension between a parent's fundamental right to control the upbringing of his or her child, and the fact that a child's best interests are "often served by developing and maintaining contact with his or her grandparents." *See Swartz,* 720 N.E.2d at 1221.

■ Pursuant to the plain language of Indiana Code section 31–17–5–6, we conclude that when a trial court enters a decree granting or denying grandparent visitation, it must set forth findings of fact and conclusions of law in said decree. In those findings and conclusions, the trial court should address: 1) the presumption that a fit parent acts in his or her child's best interests; 2) the special weight that must be given to a fit parent's decision to deny or limit visitation; 3) whether the grandparent has established that visitation is in the child's best interests; and 4) whether the parent has denied visitation or has simply limited visitation.[3] *See Crafton v. Gibson,* 752 N.E.2d 78, 96–97 (Ind.Ct. App.2001). Also, in determining the best interests of the child, the trial court "may consider whether a grandparent has had or has attempted to have meaningful contact with the child."[4] *See* Ind.Code § 31–17–5–2 (1998).

In this case, the trial court failed to enter a decree setting forth its findings of fact and conclusions of law. The trial court also failed to find that visitation was in B.F.'s best interests. This is particularly troubling under the facts and circumstances of this case because there has been an allegation of abuse, and Christina did not deny or limit visitation before that allegation was made. Therefore, we remand this case to the trial court to enter findings of facts and conclusions of law as

**3.** These factors will be discussed in our discussion of the constitutionality of the Grandparent Visitation Act.

**4.** However, "this consideration is not the touchstone for determining the child's best interests." *See Woodruff v. Klein,* 762 N.E.2d 223, 228 (Ind.Ct.App.2002), *trans. denied.*

required by Indiana Code section 31–17–5–6. Because we feel that a discussion of the constitutionality of the Grandparent Visitation Act may be beneficial to the trial court on remand, we will now address that issue, which has also been raised by Christina in this appeal.

## II. Constitutionality of the Grandparent Visitation Act

Christina argues that the Grandparent Visitation Act is unconstitutional on its face and the appropriate standard to apply to a Fourteenth Amendment challenge to the statute is the "strict scrutiny" standard. Applying that standard, Christina contends that there is no compelling state interest that "outweighs the infringement on the rights of parents to control the care and upbringing of a child's life." Br. of Appellant at 12. However, our court has previously considered this issue and determined that under either a rational basis or strict scrutiny standard, the Grandparent Visitation Act is constitutional on its face. *See Crafton v. Gibson,* 752 N.E.2d 78, 92 (Ind.Ct.App.2001) (citing *Sightes v. Barker,* 684 N.E.2d 224, 233 (Ind.Ct.App.1997), *trans. denied* ).

▆▆▆ Christina also argues that the Act is unconstitutional as applied. "[A] court may apply a facially sufficient statute in an unconstitutional manner. 'The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative.' " *Id.* (citation omitted). In *Crafton,*[5] we indicated that although the grandparent visitation act was constitutional on its face, it may be applied in an unconstitutional manner especially in light of our United States Su-

preme Court's decision in *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). *Id.*

In *Crafton,* our court initially observed that Indiana's Grandparent Visitation Act is narrower than the Washington statute at issue in *Troxel* because Indiana's Act limits the right to petition for visitation to grandparents, and only under limited circumstances. *Id.* at 95, 120 S.Ct. 2054. Also, once a petition has been filed, pursuant to the Act, the trial court must follow certain procedural steps and determine whether visitation is in the child's best interests. *Id.* at 95–96, 120 S.Ct. 2054 (citing Ind.Code §§ 31–17–5–2, –7). Therefore, we found that Indiana's Act does not have the "overbreadth problem that afflicted the Washington statute." *Id.* at 96, 120 S.Ct. 2054. However, we noted that the *Troxel* Court was also concerned that under the Washington statute " 'a parent's decision that visitation would not be in the child's best interest is accorded no deference.' " *Id.* (quoting *Troxel,* 530 U.S. at 67, 120 S.Ct. 2054).

▆▆▆ Our courts presume that a fit parent acts in his or her child's best interests; therefore, a trial court "must give special weight to a fit parent's decision regarding nonparental visitation." *Id.* In *Sightes,* our court noted:

The Act does not presume that grandparent visitation is necessarily in the children's best interest. Instead, the burden is on the grandparent, as the petitioning party, to demonstrate by a preponderance of the evidence that court-ordered visitation is in the children's best interest. If such a showing is made, it falls to the court to evaluate

5. In *Crafton,* the trial court granted the grandparent's petition for visitation in 1998. After our United States Supreme Court issued its decision in *Troxel v. Granville,* the mother filed a motion for relief from judgment pursuant to Indiana Trial Rule 60(B)(7). *Id.* at 80–81.

the evidence, assess the circumstances, and carefully devise a visitation schedule that is in the children's best interest. *Id.* (quoting *Sightes,* 684 N.E.2d at 230) (internal citations omitted). As the United States Supreme Court stated in *Troxel,* " '[t]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made.' " *Id.* (citing *Troxel,* 530 U.S. at 72–73, 120 S.Ct. 2054). In *Crafton,* there was no allegation that Crafton was not a fit parent, and therefore, the trial court was required to give special weight to her decision to deny Gibson, the grandparent, visitation with the children; however, that is a rebuttable presumption, and the petitioning grandparent bears the burden of rebutting it. *Id.* at 96–97.

Another factor the *Troxel* Court determined that a trial court should give some weight to is whether a parent has agreed to some visitation. *Id.* at 97, 120 S.Ct. 2054. If the parent does agree to some visitation, then the dispute becomes how often and how much visitation will occur. *Id.* "[T]here are different interests at stake in cases where the parties cannot agree to the terms of visitation as opposed to cases where no access has been allowed," those interests being the right to have a relationship with the child versus a disagreement concerning how much access is appropriate. *Id.* (citing *Swartz v. Swartz,* 720 N.E.2d 1219, 1222 (Ind.Ct.App.1999)).

In *Crafton,* we noted that although the trial court indicated that it had applied a *Troxel* analysis to the case, from our review of the record, it appeared that the trial court did not give any special weight to Crafton's decision concerning grandparent visitation. *Id.* at 97–98, 120 S.Ct. 2054. Also, our review of the record gave us no indication regarding whether the trial court had determined if Crafton had denied Gibson visitation or had offered limited visitation. *Id.* at 98, 120 S.Ct. 2054. We concluded that without that determination, we could not discern whether any weight was given to Crafton's offer of visitation. *Id.* Therefore, our court determined that the trial court failed to apply the presumption, which is required by *Troxel,* that a "fit parent's decision with regard to grandparent visitation is made in the child's best interests." *Id.* We remanded the case to the trial court for a new hearing because the original hearing occurred prior to the *Troxel* decision, and the record had not been adequately developed in order to allow Gibson an opportunity to rebut the presumption that Crafton's decision was in her children's best interests. *Id.*

In this case, because the trial court failed to enter findings of fact and conclusions of law, we do not know whether the trial court applied the *Troxel* analysis as discussed by our court in *Crafton.* It is unclear from the record before us whether the trial court applied the presumption that a fit parent's decision with regard to grandparent visitation is made in the child's best interests and whether the court gave special weight to that decision. Therefore, we remand this case to the trial court to review the evidence presented by the parties and enter findings of fact and conclusions of law in a manner consistent with this opinion.

**Conclusion**

The Grandparent Visitation Act requires the trial court to enter findings of fact and conclusions of law. Because the trial court failed to do so in this case, it is not clear from the record before us whether the trial court applied the presumption that a fit parent acts in his or her child's best interests, and whether the court gave special weight to that decision. Therefore, we

remand this case to the trial court for proceedings consistent with this opinion.

Remanded for proceedings consistent with this opinion.

BAKER and RILEY, JJ., concur.