**Christi J. HOEING, Appellant–Respondent,**

v.

**Jean I. WILLIAMS, Appellee–Petitioner.**

No. 21A01–0706–CV–279.

Court of Appeals of Indiana.

Feb. 22, 2008.

John J. Uskert, Marcus Law Firm, Fishers, IN, Attorney for Appellant.

**OPINION**

CRONE, Judge.

### Case Summary

Christi J. Hoeing appeals the granting of Jean L. Williams's petition for grandparent visitation with Hoeing's minor child, S.W. We reverse.

### Issue

Has Hoeing established prima facie error in the trial court's decision to grant Williams's petition?

### Facts and Procedural History[1]

S.W. was born in January 1997. Hoeing and S.W.'s father, Kevin Williams, were divorced prior to the initiation of this action. Hoeing was granted custody of S.W., and Kevin was ordered to pay support and was granted visitation every other weekend and one evening per week. Kevin failed to make regular support payments, and consequently a warrant was issued for his arrest. Kevin stopped visiting with S.W. in April or May of 2006, and his whereabouts were unknown to both Hoeing and Williams at the time of the hearing on Williams's petition in February 2007. After Kevin disappeared, Hoeing permitted S.W. to visit with Williams every other weekend and every Wednesday because she knew that Williams was "an important person in [S.W.'s] life." Tr. at 17.

Hoeing had been raised as a Jehovah's Witness, discontinued practicing that religion as a young adult, and then "decided to go back to it because [she] felt it was the best thing for [her] and [her] children." *Id.* at 14. Jehovah's Witnesses do not celebrate holidays or birthdays. *Id.* In December 2006, Williams asked Hoeing if S.W. would be able to come to Williams's home on Christmas. Hoeing said no. Williams told Hoeing that S.W. had a right to celebrate Christmas and that S.W. should be able to decide whether to celebrate the holiday with Williams and her family. Although Hoeing did not permit S.W. to celebrate Christmas with Williams and her family, she did permit Williams to give S.W. birthday and Christmas gifts on the condition that Williams not refer to them as such.

On January 2, 2007, Williams filed a petition for grandparent visitation that reads in pertinent part as follows:

5. Grandparent's visitation rights are in the best interests of the child.

a. The custodial mother informed Petitioner on 12/16/06, that Petitioner would [be] denied any future visitation with [S.W.]

b. [S.W.] has had weekly contact with the Petitioner and the Petitioner's family throughout her entire life.

c. Until recently, the child's visitation schedule was largely in conformity with the Indiana Parenting Time Guidelines, i.e. every other weekend and one night through the week was spent with the Petitioner.

d. Throughout her lifetime, [S.W.] has developed a close, strong familial relationship with her father's side of the family, such that a denial of grandparent's visitation rights would adversely affect [S.W.]

6. The custodial mother practices a religion that does not recognize most holidays. While the Petitioner recognizes the mother's right to practice the religion of her choice, she feels it would be appropriate to grant holiday visitation to the Petitioner so that she and her family may celebrate holidays with [S.W.]

Appellant's App. at 34.

The trial court held a hearing on Williams's petition on February 20, 2007. Hoeing testified that she did not want to deny Williams visitation with S.W. but was concerned about Williams's willingness to respect her religious beliefs as they related to raising S.W. Hoeing further stated,

I don't necessarily think that the every other weekend and every other Wednesday [visitation] is good because we have

---

1. Because the trial court did not set forth detailed findings in its order granting Williams's petition, we base our factual reci-

tation on uncontradicted testimony from the hearing on the petition.

our own family at home. I think it's more important that [S.W.] be with me and I, actually she wasn't seeing [Williams] for the whole weekend, every other weekend up until the holiday issue. I had taken, or I had said that I wasn't going to let her go there for the whole weekend anymore. I was trying to back it off a little bit. [S.W.'s] father is not around and that time is time she can spend with me and our family at home. I was trying to consider their feelings also.

Tr. at 17.[2]

At the conclusion of the hearing, the trial court remarked,

Now, the problem I see, and I'm going to address it in this fashion, that I have a husband and wife and the wife decides that she wants to join a religion or go back to a religion, Jehovah's Witness, that does not recognize any of the holidays, birthdays or all of that and yet the child lived its first ten years celebrating all of those. Now we've got a particular problem. All of a sudden you've got mom who is custodial parent, making these decisions and now she's going to turn around and she's going to say, and the present issue in a different fashion, now all of a sudden she says, well I'm not going to let you have visitation through the guidelines because that means we're celebrating a religious holiday. I have a real problem with that because that is the right of the non-custodial parent to follow those guidelines. They were set out by the Supreme Court to say these are the rights that the non-custodial parent [has]. And it happens to be half of the Christmas holiday. It happens to be Easter. I think those (inaudible) it happens to be

the child's birthday. I think they have discussed, I don't know what your religion does as far as Father's Day and Mother's Day, but those are set out and those are rights that are given to the non-custodial parent.... You have a ... custodial parent [who] has a different religion than the non-custodial parent. Because, I'm looking at it from the standpoint that I'm the non-custodial parent and I don't believe in Christmas, I don't believe in birthdays, but yet that's the time I get to see my child. So, am I going to exercise my right during that period of time. I think I would. I may not say it's Christmas holiday. I may not say it's my birthday, but I think I would exercise that right. I can't see a non-custodial parent giving up a right to visit as it has religious (inaudible) to it.

*Id.* at 25–26.

On March 16, 2007, the trial court issued an order that reads in pertinent part:

And the Court having heard evidence and being duly advised in the premises, NOW FINDS as follows:

1. This matter is properly before this Court under I.C. 31–17–5, et seq.

2. Jean I. Williams, paternal grandmother of [S.W.], a minor child, has standing to petition this Court for grandparent's visitation with said minor child pursuant to I.C. 31–17–5–1(a)(2). The marriage of the child's parents was dissolved in Indiana.

3. In light of the evidence presented, Petitioner has rebutted the presumption that the mother's decision to deny Petitioner visitation is in the child's best interest. The Court

2. Hoeing also testified to her concerns that Kevin had been present during one of S.W.'s visits with Williams after his supposed disap-

pearance and that on other occasions Williams had left S.W. with other family members.

finds that Grandparent's visitation is in the best interests of the minor child and the Petitioner has had meaningful contact with [S.W.] for the duration of the child's life. It is in the child's best interests to continue to have a close, familial relationship with her grandmother.

It is therefore, ORDERED, ADJUDGED AND DECREED that:

1. Petitioner shall have reasonable visitation with said minor child. If the parties cannot agree to a visitation schedule, the Indiana Parenting Time Guidelines shall apply [except for midweek [3]].

2. This Order shall remain in effect until further order of this Court.

Appellant's App. at 3.[4]

Hoeing filed a motion to correct error, which the trial court denied. This appeal ensued.

### Discussion and Decision

■ Indiana Code Section 31–17–5–1(a) of the Grandparent Visitation Act provides that a child's grandparent may seek visitation rights if the marriage of the child's parents has been dissolved in Indiana. Indiana Code Section 31–17–5–2(a) states that the court may grant visitation rights if it determines that visitation rights are in the best interests of the child. In determining the child's best interests, the court may consider whether a grandparent has had or has attempted to have meaningful contact with the child. Ind.Code § 31–17–5–2(b).

In *Swartz v. Swartz*, we observed that

> [g]randparent visitation statutes are a legislative recognition that a child's best interest is often served by developing and maintaining contact with his or her grandparents. Grandparents are members of the extended family whom society recognizes as playing an important role in the lives of their grandchildren, the importance of which has been given added meaning by the legislature's policy judgment underlying the Act. The legislature designed the Act to promote intergenerational contact and strengthen the bonds of the extended family in an

---

3. The bracketed language is a handwritten addendum to the trial court's order and appears in the chronological case summary's synopsis of the order.

4. Indiana Code Section 31–17–5–6 states that "[u]pon hearing evidence in support of and opposition to a petition filed under this chapter, the court shall enter a decree setting forth the court's findings and conclusions." In *McCune v. Frey*, we explained that

> the purpose of findings of fact and conclusions of law is to provide the parties and reviewing courts with the theory upon which the case was decided. It is important for parties and the reviewing court to have a clear understanding of how and why the trial court made its decision. It is particularly imperative in a grandparent visitation case because of the tension between a parent's fundamental right to control the upbringing of his or her child, and the fact that a child's best interests are often served

by developing and maintaining contact with his or her grandparents.

783 N.E.2d 752, 756 (Ind.Ct.App.2003) (citations, quotation marks, and brackets omitted). We then stated that

> when a trial court enters a decree granting or denying grandparent visitation, it must set forth findings of fact and conclusions of law in said decree. In those findings and conclusions, the trial court should address: 1) the presumption that a fit parent acts in his or her child's best interests; 2) the special weight that must be given to a fit parent's decision to deny or limit visitation; 3) whether the grandparent has established that visitation is in the child's best interests; and 4) whether the parent has denied visitation or has simply limited visitation.

*Id.* (footnote omitted). In this case, the trial court's findings and conclusions are perfunctory at best and fail to address the constitutional issues that lie at the heart of this dispute.

era that has witnessed the disintegration of the nuclear family in an effort to provide an alternative or supplementary source of family support for children. Grandparents, however, do not have the legal rights or obligations of parents.

*Parents have a constitutionally recognized fundamental right to control the upbringing, education, and religious training of their children. See, e.g., Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). By contrast, Grandparents do not possess a constitutional liberty interest in visitation with their grandchildren.* When drafting the Grandparent Visitation Act, the legislature had to balance two competing interests: the rights of parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren. It has long been recognized in our traditions and collective conscience that parents have the right to raise their children as they see fit. *Visitation rights conferred by the Act are not a substantial infringement on the parent's fundamental rights because the Act only contemplates occasional, temporary visitation as found to be in the best interest of the child.*

720 N.E.2d 1219, 1221–22 (Ind.Ct.App. 1999) (quotation marks and some citations omitted) (emphases added).

▌ Hoeing contends that the trial court erred in several respects in granting Williams's petition for grandparent visitation. Typically, the determination of whether granting grandparent visitation rights is in a child's best interests is a matter for the trial court's discretion, reversible only upon a showing of an abuse of that discretion. *Ramsey v. Ramsey,* 863 N.E.2d 1232, 1237 (Ind.Ct.App.2007). "An abuse of discretion exists where the trial court's decision is clearly against the logic and effects of the facts and circumstances before the trial court or the reasonable, probable deductions to be drawn therefrom." *Id.* We note, however, that Williams has failed to file an appellee's brief.

When an appellee fails to submit a brief, we will not undertake the burden of developing arguments for the appellee. In these situations, we apply a less stringent standard of review with respect to showings of reversible error, and we may reverse the trial court's decision if the appellant can establish prima facie error. In this context, prima facie error is defined as "at first sight, on first appearance, or on the face of it."

*Id.* (citations, quotation marks, and brackets omitted).

We conclude that Hoeing has established prima facie error in the trial court's decision to grant Williams—a grandparent with no constitutional liberty interest in visiting her grandchild—visitation rights nearly equivalent to those of a non-custodial parent. As noted above, the Grandparent Visitation Act contemplates only "occasional, temporary visitation" that does not substantially infringe on a parent's fundamental right "to control the upbringing, education, and religious training of their children." *Swartz,* 720 N.E.2d at 1221. In *Swartz,* we reversed the trial court's decision to grant the child's paternal grandparents and great-grandmother visitation on alternate weekends, a schedule "akin to that devised for noncustodial parents," which would have resulted in the nine-year-old child living outside her custodial mother's home seventy-three days per year. *Id.* at 1222. We noted that such an arrangement would "fundamentally alter" the "close, healthy, and loving" relationship between the child and her mother and was "complicated by the possibility that [the child's father] may also exercise his

visitation rights at any time." *Id.* We further noted that the grandparents had "essentially been given the visitation rights of [a] parent in lieu of [the child's father], with no corresponding duties." *Id.* at 1223.

In this case, Hoeing points out that S.W. will be shuttled between Hoeing's home and Williams 94 (or 96) days per year. Because of the alternating visitation schedule, the Trial Court's order prohibits Hoeing from involving [S.W.] in any (religious) activities that would take place on Williams' weekends; this would also be extended to holidays, spring break and five weeks of visitation during the summer. Such visitation schedule would be further complicated if the absent father (Kevin) elected to exercise his court ordered visitation, effectively leaving Hoeing with a minimum time of Monday through Friday each week, approximately 35 weeks per year to raise [S.W.] as the "custodial parent."

. . . .

Secondly, the visitation granted by the Trial Court is that which is generally awarded to a non-custodial parent who has responsibilities in raising his/her child. Williams has no corresponding duties or responsibilities; Williams received extensive visitation benefits and no responsibilities.

*Thirdly, and perhaps most importantly, the award of such extensive visitation to Williams clearly interferes with Hoeing's constitutionally recognized fundamental right to control the upbringing, education and religious training of [S.W.]* Hoeing argued at trial that she was raised as a Jehovah's Witness, that although she had not been practicing the faith for awhile, she had recently gone back to following the precepts as a Jehovah's Witness, which include not celebrating birthdays, Christ-mas, and other holidays. It is Hoeing's constitutional right to control the religious training of [S.W.]

Appellant's Br. at 6–7 (citations omitted) (emphasis added).

Constitutional considerations aside, we note that our legislature has specifically granted custodial parents the authority to "determine the child's upbringing, including the child's education, health care, and religious training." Ind.Code § 31–17–2–17(a). Such authority may be limited "after motion by a noncustodial *parent*" only if the trial court finds that the child's "physical health would be endangered" or "emotional development would be significantly impaired." Ind.Code § 31–17–2–17(b) (emphasis added). In short, a child's grandparent has no statutory authority to ask the court to limit the custodial parent's right to raise that child as the parent sees fit.

In light of the foregoing, we agree with Hoeing that the trial court's visitation order impermissibly interferes with her fundamental right to control S.W.'s upbringing and religious training. Therefore, we reverse.

Reversed

BAILEY, J., and NAJAM, J., concur.