## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2018, 7:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEES |
|---|---|
| Joseph A. Colussi | Leanna Weissmann |
| Colussi Law Office | Lawrenceburg, Indiana |
| Madison, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kristina M. Finn, | June 29, 2018 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 18A-MI-184 |
| v. | Appeal from the Dearborn Circuit Court |
| Patricia Murphy and Kelly Mitchell, | The Honorable James D. Humphrey, Judge |
| *Appellees-Respondents* | The Honorable Kimberly Schmaltz, Magistrate |
| | Trial Court Cause No. 15C01-1709-MI-44 |

**Crone, Judge.**

# Case Summary

Kristina M. Finn ("Grandmother") appeals the trial court's order denying her petition for visitation with her granddaughter, M.F. ("Child"). Grandmother concedes that the court's findings are supported by the evidence but argues that they do not support the denial of her petition. We disagree and therefore affirm.

# Facts and Procedural History

In March 2010, Child was born out of wedlock to Grandmother's daughter, Patricia Murphy ("Mother"), and Kelly Mitchell ("Father"). Father signed a paternity affidavit at the time of Child's birth, and Mother was awarded custody. Father lives in Texas and has had almost no contact with Child. Grandmother has been in a long-term committed relationship with Richard Pyles and lives with him in Carroll County, Kentucky.

Mother and Child lived with Grandmother for roughly the first year of Child's life, during which Grandmother tended to Child's needs on a daily basis. Mother and Child then moved to Florence, Kentucky, and Grandmother cared for Child on weekdays through 2012. Mother and Child moved back in with Grandmother in 2013 and moved out in late 2014. From that time until August 2015, when Child started school, Grandmother visited with Child on alternate weekends. Thereafter, Grandmother visited with Child one weekend each month. Grandmother also took occasional trips to Florida with Child and visited her on various birthdays and holidays. At some point, Mother married

Tyler Murphy ("Stepfather") and had two children with him. Mother and Stepfather experienced marital difficulties, and they separated in June 2017. At that time, Mother terminated contact between Grandmother and Child.

[4] Grandmother filed a petition for grandparent visitation in Indiana, where Mother and Child currently live. After a hearing, the trial court issued an order denying Grandmother's petition that contains findings on the foregoing facts, as well as the following additional findings and conclusions:[1]

> 10. Grandmother is closely and emotionally bonded to Child. Child is similarly bonded to Grandmother. Mother agreed that Child knows and loves Grandmother. Child has regularly associated with her three maternal cousins and two maternal aunts when visiting with Grandmother. Grandmother wants Child to know the maternal side of her family and their heritage.
>
> ….
>
> 12. Mother stated three reasons for denying Grandmother visitation, *i.e.*, that Grandmother has a drug problem, that Mr. Pyles has a disturbing infatuation with Child, and that Mr. Pyles is abusive to Grandmother.
>
> 13. In October of 2016, Grandmother was being treated for a shoulder injury sustained in her work as a housekeeper. Grandmother was prescribed muscle relaxing and pain medication by her treating physician. Shortly after beginning the medication, Grandmother drove her vehicle, became dro[w]sy and hit a guard rail damaging the vehicle, but causing no physical injury. Grandmother was the only person in the vehicle.

---

[1] We have replaced the parties' names with their corresponding designations where appropriate.

Grandmother was seen at the hospital and released the same day. Grandmother immediately discontinued the use of both medications, relying on physical therapy to treat the shoulder injury.

14. There was testimony that Grandmother had overdosed on an illegal drug and also abuses over the counter medications. Danielle Finn, Mother's sister, who has three children and is regularly around her mother, Grandmother, was cross-examined extensively by Mother and stated that Grandmother does not use illegal drugs and does not have a drug problem. Mother also claimed that Grandmother regularly used legal, over-the-counter products for energy. Mother did not attribute the use of the legal, over-the-counter products to any accident.

15. Notwithstanding Mother's claims concerning Grandmother's illegal drug use and concerning use of over-the-counter products for energy, Mother did not terminate Child's visitation with Grandmother until June of 2017, at a time when Mother was separated from Stepfather and experiencing trouble in her marriage.

16. Mother claimed that Mr. Pyles was abusive to Grandmother. Mother testified that there was no physical abuse, but mental abuse involving Grandmother's being required to agree with Mr. Pyles. Mother offered no testimony concerning any physical or mental abuse of Child by Grandmother or Mr. Pyles.

17. Grandmother was cross-examined extensively by Mother. No issue of abuse was raised or confirmed in that cross-examination. Grandmother's daughter, Danielle Finn, who was also cross-examined extensively by Mother, testified that Grandmother has a good relationship with Mr. Pyles, that Mr. Pyles is a very good man, that Mr. Pyles and Grandmother are good to her three children, and that Mr. Pyles is listed as an emergency contact for her and her children because of his reliability, and that she had no hesitation whatsoever leaving,

and does regularly leave, her three children with Grandmother and Mr. Pyles.

18. Notwithstanding Mother's claims concerning Mr. Pyles, Mother allowed Child to regularly visit, and take week long vacations, including Spring Break of 2017, with Grandmother and Mr. Pyles through June of 2017.

19. Mother has intentionally denied visitation of Grandmother with Child from June of 2017 through the present time. Mother stated that she intends to continue to deny visitation due to the concerns about drug use/overdose and abuse of over the counter medications. She does not feel it is safe to leave her child with Grandmother at this time.

20. Grandmother seeks visitation with Child one weekend each month as she had enjoyed prior to June of 2017. Grandmother also seeks one week each year during Child's Spring or Summer breaks, and for six hours on a day near or on Christmas Day, Thanksgiving Day, her birthday and Child's birthday.

## B. CONCLUSIONS OF LAW.

21. [Indiana Code Section] 31-17-5-1 provides for grandparent visitation.…[2]

22. [Indiana Code Section] 31-17-5-2 directs the Court to determine what is in the best interests of Child. The Court is also directed by [Indiana Code Section] 31-17-5-2 to consider whether Grandmother has or has attempted to have meaningful contact

---

[2] *See* Ind. Code § 31-17-5-1 (providing in pertinent part that a child's grandparent may seek visitation rights if the child was born out of wedlock and the child's father has established paternity).

with Child.[3]  Grandmother has had meaningful contact with Child for seven of Child's seven and one-half years of life. Grandmother has attempted to have meaningful contact with Child following June of 2017 through the present time.

23.  The Indiana Supreme Court … held in *In re M.L.B.*, 983 N.E.2d 583, 586 (Ind. 2013) that there is a presumption that a fit parent's decision about grandparent visitation is in the child's best interest, and that special weight should be given a fit parent's decision.  A grandparent, however, is entitled to rebut the presumption, particularly with evidence that the parent has allowed visitation, which should be given some weight.  *M.L.B.*, 983 N.E.2d at 589; *R.W. v. M.D.*, 38 N.E.3d 993, 998 (Ind. 2015). Ultimately, a court must determine whether the grandparent, who has the burden of proof, has established that visitation is in the grandchild's best interest.  *M.LB.*, 983 N.E.2d at 586; *R.W.*, 38 N.E.3d at 998.

24.  Mother and Father are fit parents, although Father is a parent completely absent from the life of Child.  Both Mother and Father state that it is not in Child's best interest to visit Grandmother.  Special weight is given to their decision.  The Court does not find that it is in Child's best interest to have Court ordered grandparent visitation with Grandmother.  *R.W.*, 38 N.E.3d at 1000; *J.P. v. R.C.*, 51 N.E.3d 380 (Ind. Ct. App. 2016).

Appealed Order at 3-7 (underlining omitted).  Grandmother now appeals.

---

[3] *See* Ind. Code § 31-17-5-2 ("(a) The court may grant visitation rights if the court determines that visitation rights are in the best interests of the child.  (b) In determining the best interests of the child …, the court may consider whether a grandparent has had or has attempted to have meaningful contact with the child.").

# Discussion and Decision

[5] Grandmother contends that the trial court erred in denying her petition for visitation with Child. Initially, we observe that "grandparents 'do not have the legal rights or obligations of parents,' and 'do not possess a constitutional liberty interest in visitation with their grandchildren.'" *McCune v. Frey*, 783 N.E.2d 752, 755 (Ind. Ct. App. 2003) (quoting *Swartz v. Swartz*, 720 N.E.2d 1219, 1222 (Ind. Ct. App. 1999)). "In contrast, parents do have a 'constitutionally recognized fundamental right to control the upbringing, education, and religious training of their children.'" *Id*. at 755-56 (quoting *Swartz*, 720 N.E.2d at 1222). The right of grandparents to seek visitation is not grounded in common law, but is a product of legislation. *R.W.*, 38 N.E.3d at 998. "Grandparent visitation statutes are a legislative recognition that a child's best interest is often served by developing and maintaining contact with his or her grandparents." *Swartz*, 720 N.E.2d at 1221. "When drafting the Grandparent Visitation Act, the legislature had to balance two competing interests: the rights of parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren." *Id*. at 1222.

[6] "Whenever a trial court enters an order on a petition filed under the Grandparent Visitation Act, the trial court is required to issue specific findings and conclusions in its decree." *In re Visitation of A.D.*, 18 N.E.3d 304, 309 (Ind. Ct. App. 2014) (citing Ind. Code § 31-17-5-6). "Accordingly, we apply the two-tiered standard of review set forth in Indiana Trial Rule 52(A)." *Id*. "First, we must consider whether the evidence supports the findings; second, we

determine whether those findings support the judgment. We do not reweigh evidence or assess the credibility of witnesses, and we consider the evidence and all reasonable inferences in favor of the trial court's judgment." *Id.* (citation omitted). On appeal, we "shall not set aside the findings or judgment unless clearly erroneous …." Ind. Trial Rule 52(A). "A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts." *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009) (citation omitted). "[W]e give substantial deference to trial courts in family law matters." *Wilder-Newland v. Kessinger*, 967 N.E.2d 558, 560 (Ind. Ct. App. 2012), *trans. denied*. "Because Grandmother appeals a negative judgment, she must show that the evidence points unerringly to a conclusion different from that reached by the trier of fact, or that the judgment is contrary to law." *Id.* "This means that even if we might have taken a different course of action than that which a trial court took, we are bound to review the order, and findings and conclusions, for clear error only." *Id.*

[7] Grandmother concedes that the trial court's findings are supported by the evidence, including the finding that Mother and Father are fit parents. "Trial courts are to 'presume that a fit parent's decision is in the best interests of the child' in deciding whether to grant or deny a grandparent's request for visitation." *Hicks v. Larson*, 884 N.E.2d 869, 875 (Ind. Ct. App. 2008) (quoting *Crafton v. Gibson*, 752 N.E.2d 78, 96 (Ind. Ct. App. 2001)), *trans. denied*. "Acting

under this presumption, trial courts must give special weight to a parent's decision to deny or limit visitation." *Id*. The presumption is rebuttable, however, and the grandparent bears the burden of rebuttal. *Id*.

[8] Grandmother argues that there is a "disconnection" between the trial court's findings and its conclusion that it is not in Child's best interests for Grandmother to have visitation, noting that the court "did not accept Mother's allegations at face value, and entered specific findings which rebutted her objections" to Grandmother's visitation with Child. Appellant's Br. at 17.[4] The relevant question is not whether Grandmother rebutted Mother's stated reasons for denying visitation, but whether Grandmother rebutted the presumption that Mother's decision to deny visitation is in Child's best interests. This is a subtle but important distinction, especially since the trial court was required to give special weight to Mother's decision.

[9] The trial court found that Mother intended to continue to deny Grandmother visitation due to concerns about drug use, which were prompted in no small part by Grandmother's medication-related accident in October 2016, less than a year before Mother terminated visitation.[5] The trial court also found that, notwithstanding Mother's concerns about Pyles, Mother allowed Child to

---

[4] In support of her argument, Grandmother relies on cases in which this Court affirmed the granting of a grandparent's visitation petition; because Grandmother appeals from the denial of her petition, we find those cases inapposite.

[5] Stepfather testified that Grandmother told him that the accident was caused by a heroin overdose. Tr. Vol. 2 at 78. The trial court did not specifically find this testimony to be credible, however. *See* Appealed Order at 4 (finding 14).

regularly visit and take vacations with him until June 2017. With respect to this finding, we observe that Mother, as Child's parent, has a constitutionally recognized right to decide whom Child should associate with that is not constrained by her own past conduct or the opinions of third parties. Stated differently, Mother has a right to change her mind about allowing Child to spend time with Pyles based on her own concerns, regardless of whether others (such as her sister) believe them to be valid.[6] And finally, although the trial court found that Grandmother and Child had been close and emotionally bonded, Grandmother presented no evidence that the termination of visitation had negatively affected Child's well-being in any way. In light of the special weight that the trial court was required to give Mother's decision to deny visitation, we cannot say that the trial court clearly erred in concluding that Grandmother failed to rebut the presumption that Mother's decision was in Child's best interests. In other words, Grandmother has not shown that the evidence points unerringly to a conclusion different from that reached by the

---

[6] The same may be said for Mother's decision to terminate Grandmother's visitation with Child. Life is inherently fluid, and the fact that a parent has allowed her child to spend time with a grandparent or other person in the past cannot alone be allowed to override the parent's future decision-making.

trial court.[7]  Therefore, we affirm the denial of Grandmother's petition for visitation.

[10]  Affirmed.

Bailey, J., concurs.

Brown, J., dissents with opinion.

---

[7] We agree with the dissent that some of the trial court's findings could have supported a ruling in Grandmother's favor, but our role as an appellate court is to determine whether the findings as a whole point unerringly to a conclusion different from that reached by the trial court.  By merely emphasizing the findings favorable to Grandmother, the dissent has disregarded the trial court's opportunity to observe the witnesses and assess their credibility and demeanor firsthand.  At the time of the final hearing, Grandmother had been denied visitation for six months, and the trial court was uniquely situated to evaluate the status quo and determine whether reinstating visitation would be in Child's best interests.  Even if we might have reached a different decision based on the same findings, we cannot conclude that the trial court's decision is clearly erroneous.

# IN THE
# COURT OF APPEALS OF INDIANA

Kristina M. Finn,

*Appellant-Petitioner,*

v.

Patricia Murphy and Kelly Mitchell,

*Appellees-Respondents*

June 29, 2018

Court of Appeals Case No. 18A-MI-184

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

The Honorable Kimberly Schmaltz, Magistrate

Trial Court Cause No. 15C01-1709-MI-44

**Brown, J., dissenting.**

[11] I respectfully dissent from the majority's decision that the trial court's findings support the denial of Grandmother's petition for visitation. The trial court entered findings of fact that Child was born in March of 2010, that Grandmother has had regular and meaningful contact with Child from the time of Child's birth until June of 2017, that Grandmother and Child are closely and emotionally bonded to each other, and that Mother agreed that Child knows and loves Grandmother. The court found that Child and Mother lived in Grandmother's home for at least eight months following Child's birth and again

for over one year during 2013 and 2014, that following Child and Mother's initial stay with Grandmother and through 2012 Grandmother provided daycare for Child on a daily basis during the week, that from late 2014 through August of 2015 Grandmother visited with Child on alternate weekends, and that after Child started school in August 2015 Grandmother visited with Child one weekend each month for nearly two years through June of 2017.

[12] Further, the trial court entered findings which specifically responded to Mother's stated reasons for objecting to Grandmother's request for visitation. The court found that in 2016 Grandmother was treated for a shoulder injury, was prescribed medication, became drowsy while driving alone and struck a guard rail causing no physical injury, and immediately discontinued use of her medication, and that, notwithstanding Mother's claims concerning Grandmother's drug use, Mother did not terminate visitation with Grandmother until June of 2017 when Mother was separated from Stepfather. The court also found, with respect to Mother's concerns regarding Pyles, that Mother offered no testimony concerning any physical or mental abuse of Child by Grandmother or Pyles, that Grandmother was cross-examined extensively by Mother, that no issue of abuse was raised or confirmed in that cross-examination, and that, notwithstanding Mother's claims related to Pyles, Mother allowed Child to regularly visit and take week-long vacations including during spring break of 2017 with Grandmother and Pyles through June of 2017. The court also found that Grandmother seeks visitation with Child one weekend each month as she had enjoyed prior to June of 2017, one week

during Child's spring or summer breaks, and six hours near or on Christmas Day, Thanksgiving Day, her birthday, and Child's birthday.

[13] I would conclude, notwithstanding the special weight given to a fit parent's decision regarding nonparental visitation, that the trial court's findings, including those regarding Mother's objections to Grandmother's request, the significant bonding between Grandmother and Child, the extent of Grandmother's visitation and regular and meaningful contact with Child from Child's birth in March of 2010 until June of 2017, and that Mother has denied all visitation to Grandmother since June of 2017, do not support its judgment denying Grandmother's petition. For the foregoing reasons, I would reverse the trial court's denial of Grandmother's petition.