**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANTS:

**RICHARD J. THONERT**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE PATERNITY OF B.L.E. | ) | |
| | ) | |
| M.T.R. and M.J.R., Grandparents, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 92A03-1210-JP-419 |
| | ) | |
| A.E., Mother, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE WHITLEY CIRCUIT COURT
The Honorable James R. Heuer, Judge
Cause No. 92C01-1106-JP-306

**April 4, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

The paternal grandparents of B.L.E., M.T.R. ("Grandfather") and M.J.R. ("Grandmother" and collectively "Grandparents"), appeal the trial court's order denying their petition for visitation. The Grandparents raise two issues, one of which we find dispositive and revise and restate as whether the trial court issued sufficient findings and conclusions along with its order. We remand.

FACTS AND PROCEDURAL HISTORY

A.E. ("Mother") and R.R. ("Father") are the parents of B.L.E. who was born on March 31, 2010. At some point Father was convicted of molesting one of Mother's other children.

On June 7, 2011, Father filed a verified petition to establish paternity, support, and visitation. On February 1, 2012, the court entered an order which established Father's paternity of B.L.E. The order also found that it was in the best interest of B.L.E. that Mother have sole custody and that Father have no parenting time until he is released from prison and petitions the court for parenting time.

After paternity was established, Grandparents tried to arrange with Mother for visitation, but Mother declined. On March 26, 2012, Grandparents filed a petition for grandparent visitation. On May 22, 2012, Grandparents filed a motion for findings of fact and conclusions of law.

That same day, the court held a hearing on Grandparents' petition for visitation. Mother described Grandfather's "whole demeanor and behavior" and Grandmother's attitude as "off the wall." Transcript at 7. When asked why Mother did not want Grandparents to have visitation with B.L.E., Mother stated: "They don't know her, so

2

there's no reason for her to be known by them. She's fine right now where she's at and [Father] never made an attempt to have visitation, so I don't see why his parents need to have visitation." Id. at 2. Mother also testified that Grandfather does not see his other grandchildren and that Grandmother does not see her other grandchildren on a daily basis.

Grandmother testified that she is a director of health care at a college and works full-time and Grandfather is self-employed. Grandmother testified that she contacted Mother through her son's best friend regarding her interest in visiting and supporting B.L.E. and in assisting in her care. Grandmother stated that she texted only once because Father's trial was occurring and she did not want "in some how to look like [they] were trying to influence during the trial," and that she later contacted Mother through her attorney. Id. at 16. Grandmother indicated that B.L.E. has an extended family and that she and Grandfather love their grandchildren very much. Grandmother testified that she sees her grandchildren anytime that she can and that she does not see her grandchildren every day because she does not arrive home from work until 6:00 and her grandchildren go to bed between 6:00 and 7:00.

Grandfather testified that he believed it was in B.L.E.'s best interest to see her grandparents and the other side of the family. Grandfather also testified that his answers were the same as Grandmother's answers. When asked on cross-examination whether he was even allowed on his son G.R.'s property, Grandfather stated: "[T]hat's not correct." Id. at 23.

3

After Grandparents rested, Mother's counsel moved for a judgment on the evidence, and the court denied the motion. Mother then testified that B.L.E. knew Grandparents' son, G.R., and his wife, T.R., and the Grandparents' other grandchildren. When asked how she would respond if B.L.E. asks why she cannot see Grandparents, Mother testified:

> If [B.L.E.] would ever know that she has grandparents . . . then I would just tell her, you know they have a lot anger [sic] towards me for what happened to their son. Neither one of them have apologized or taken accountability for what happened. You know, if they would even say, "I understand what happened." There's a lot of feelings. Why would I let another daughter go into the care of them knowing that they blame me for what happened to their son? I'm sorry, the son thing may not have any thing to do with it, but it does. They still blame me. I hear it in the public. I hear them talking about it all the time. People come and tell me.

Id. at 29. Mother clarified that her statement was what she was going to tell Grandparents and that if B.L.E. ever wanted to see Father that that would be B.L.E.'s decision when she was older. Mother testified that she works for G.R. and that T.R. watches B.L.E. during the day.

T.R. testified that she did not allow Grandparents to have her children alone anymore and that Grandfather is not allowed on her property. On cross-examination, T.R. testified that Grandmother has visited with her children and that Grandfather visits with her children when they go to the Grandparents' home. Grandmother testified that she was not angry with Mother or her daughter, that she understood, that she had no animosity, and that she had not bad-mouthed Mother.

On September 6, 2012, the court entered an order denying Grandparents' petition for visitation. Specifically, as to the denial of visitation, the court's order states:

4

The Court, having taken under advisement the issue of grandparent visitation, now finds:

1. B.L.E., the minor child in these proceedings, was born on March 31, 2010.

2. She resides with [Mother].

3. [Father] is incarcerated at the Department of Correction as a result of being convicted and sentenced for the offense of child molesting. The victim of that offense is an older child of [Mother] and, therefore, B.L.E.'s half sister.

4. The paternal [Grandparents] are seeking grandparent visitation herein. They have never visited or had contact with B.L.E. to date.

5. [Mother] is a fit parent. She has denied [Grandparents'] request for grandparent visitation.

6. [Mother] is employed by [G.R.] who is a son of [Grandparents].

7. [G.R.'s] wife, [T.R.], provides child care for B.L.E. during [Mother's] hours of employment.

8. [G.R.] and [T.R.] have three children.

9. [T.R.] testified that her children are not allowed to be alone with [Grandparents] and that [Grandfather] is not allowed on their property.

10. The requested visitation rights are not in the child's best interests.

11. The grandparents have failed to meet their burden of proof and their request for grandparent visitation is denied.

Appellant's Appendix at 23-24.

## ANALYSIS

We observe that Mother has not filed an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing appellee's arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant

establishes *prima facie* error. Zoller v. Zoller, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. Wright v. Wright, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002). Questions of law are still reviewed *de novo*, however. McClure v. Cooper, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

Grandparents argue that the trial court's order is contrary to the principles of the Grandparent Visitation Act and case law. Specifically, Grandparents assert that the order fails to set forth specific findings as to what factors the trial court considered under the best interest analysis of the child, and how that decision provides the most supportive environment for the child. Grandparents contend that there are no findings "as to the attempted visitation efforts made by [G]randparents from August 2011 through May 22, 2012; [Mother's] refusal, and how the trial court determined such attempts or refusal were considered and if so what weight was given to those attempts as well as the denial." Appellant's Brief at 15. Grandparents also argue that "there are no specific findings relating to any facts as to how the trial court came to the conclusion that a fit parent would deny grandparent visitation under the totality of the circumstances of this out of wedlock situation." Id.

The United States Supreme Court has broadly agreed that natural parents have a fundamental constitutional right to direct their children's upbringing without undue governmental interference, and that a child's best interests do not necessarily override that parental right. In re Visitation of M.L.B., (filed March 7, 2013), Ind. No. 41S01-

6

1209-MI-556, slip op. at 4 (citing <u>Troxel v. Granville</u>, 530 U.S. 57, 120 S. Ct. 2054 (2000)). The Indiana legislature has enacted the Grandparent Visitation Act "recognizing that 'a child's best interest is often served by developing and maintaining contact with his or her grandparents.'" <u>Ramsey v. Ramsey</u>, 863 N.E.2d 1232, 1237 (Ind. Ct. App. 2007) (quoting <u>Swartz v. Swartz</u>, 720 N.E.2d 1219, 1221 (Ind. Ct. App. 1999)). Ind. Code § 31-17-5-6 governs the decree on a petition for grandparent visitation and provides: "Upon hearing evidence in support of and opposition to a petition filed under this chapter, the court shall enter a decree setting forth the court's findings and conclusions." This court has previously held:

> The ultimate question is whether visitation in the face of family discord is in the child's best interest. That question can only be answered by looking at the totality of the circumstances presented. While the relationship may, in any given case, be sufficient to make grandparent visitation in the child's best interest, notwithstanding the dissension between the parent and grandparent, it may not be sufficient to overcome the effects of the discord on the child in another. That difficult determination is left to the wisdom and the discretion of the trial court.

<u>Daugherty v. Ritter</u>, 646 N.E.2d 66, 68 (Ind. Ct. App. 1995), <u>adopted</u> <u>by</u> 652 N.E.2d 502 (Ind. 1995).

"Because the Grandparent Visitation Act requires specific findings of fact and conclusions of law, Ind. Code § 31-17-5-6, we apply the two-tiered Indiana Trial Rule 52 standard of review." <u>In re M.L.B.</u>, slip op. at 3. We first determine whether the evidence supports the findings, and then whether the findings support the judgment. <u>Id.</u> We set aside findings of fact only if they are clearly erroneous, deferring to the trial court's superior opportunity to judge the credibility of the witnesses. <u>Id.</u> A judgment is clearly

7

erroneous when the findings fail to support the judgment or when the trial court applies the wrong legal standard to properly found facts. Id.

In striking a balance between parental rights and children's interests, a plurality of the United States Supreme Court discussed several key principles in Troxel, which Indiana courts have distilled into four factors that a grandparent-visitation order should address:

> (1) a presumption that a fit parent's decision about grandparent visitation is in the child's best interests (thus placing the *burden* of proof on the petitioning grandparents);

> (2) the "special weight" that must therefore be given to a fit parent's decision regarding nonparental visitation (thus establishing a heightened *standard* of proof by which a grandparent must rebut the presumption);

> (3) "some weight" given to whether a parent has agreed to some visitation or denied it entirely (since a denial means the very *existence* of a child-grandparent relationship is at stake, while the question otherwise is merely how much visitation is appropriate); and

> (4) whether the petitioning grandparent has established that visitation is in the child's best interests.

Id. at 4-5 (citing McCune v. Frey, 783 N.E.2d 752, 757-759 (Ind. Ct. App. 2003)). In In re K.I., 903 N.E.2d 453, 462 (Ind. 2009), the Indiana Supreme Court approved of the four factors stated in McCune and took the additional step of declaring that a grandparent-visitation order "*must* address" those factors in its findings and conclusions. Id. at 5 (quoting K.I., 903 N.E.2d at 462). "[T]rial courts must consider all four Troxel principles, as distilled by McCune and made mandatory by K.I." Id. The court in McCune stated:

8

> It is important for parties and the reviewing court to have a clear understanding of how and why the trial court made its decision. It is particularly imperative in a grandparent visitation case because of the tension between a parent's fundamental right to control the upbringing of his or her child, and the fact that a child's best interests are "often served by developing and maintaining contact with his or her grandparents."

783 N.E.2d at 757.

While the court's order mentions B.L.E.'s best interest and that Grandparents failed to meet their burden of proof, we find it lacking in addressing the above-cited factors and we cannot say that the findings are sufficient. See In re M.L.B., slip op. at 8 ("In ordering new findings on the old evidence, it is not our goal to impose a rigid formalism, under which any order that recites enough of Troxel's 'magic words' will be affirmed. Obviously, it will not be enough to merely recite those factors, unless there is also analysis of how the evidence as weighed by the trial court fits within that framework."). As described earlier, the parties' testimony conflicts in part, and the trial court did not find that Mother's testimony was more credible or discuss the testimony or make specific findings related to the testimony within the context of the four McCune factors. While the trial court made some findings based upon the record, we cannot say that the findings are sufficient particularly in light of the fact that Mother has denied Grandparents any visitation and the very existence of a child-grandparent relationship is at stake.

When a trial court fails to issue specific findings in accordance with McCune, the order is voidable, and the remedy on appeal is a remand to the trial court instructing it to enter a proper order containing the required findings. In re M.L.B., slip op. at 8.

Accordingly, we remand to the trial court for entry of new findings and conclusions revealing its consideration of all four <u>McCune</u> / <u>K.I.</u> factors.[1]

For the foregoing reasons, we remand to the trial court to enter an order containing findings and conclusions as required by <u>K.I.</u> and <u>McCune</u>.

Remanded.

BAILEY, J., and VAIDIK, J., concur.

---

[1] Grandparents argue that the trial court abused its discretion because the evidence leads unerringly to the conclusion that it would be in B.L.E.'s best interest to visit with Grandparents. Given the presumption that a fit parent's decision about grandparent visitation is in the child's best interests, that special weight must be given to a fit parent's decision regarding nonparental visitation, and that the burden of proof is on the petitioning grandparents, we cannot say that this record precludes a denial of grandparent visitation. Rather, we conclude that the trial court did not enter sufficient findings.