# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Madison, Indiana

ATTORNEY FOR APPELLEE:

**JOHN L. KELLERMAN, II**
Batesville, Indiana

**FILED**

Sep 30 2014, 9:36 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE VISITATION OF A.D. AND B.D., | ) | |
| | ) | |
| CANDY MILLER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No.  69A05-1401-DR-39 |
| | ) | |
| ABBY DICKENS, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE RIPLEY CIRCUIT COURT
The Honorable Darrell M. Auxier, Special Judge
Cause No. 69C01-1304-DR-45

**September 30, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Paternal grandmother, C.M. ("Grandmother") appeals the trial court's denial of her petition for grandparent visitation, under the Grandparent Visitation Act, with A.J.M.D. and B.R.M.D. (collectively "the Children"), who are the children of A.D. ("Mother"). The parties entered into an agreement—which was then set forth in an agreed order—that allowed Grandmother to have supervised visitation with the Children under certain conditions during the two months pending a final review hearing. Following that hearing, the trial court denied Grandmother's grandparent visitation petition, finding that Grandmother had neither met her burden to rebut the presumption accorded to Mother as a fit parent nor her burden to show that visitation was in the Children's best interests.

Grandmother now appeals the trial court's order, arguing that the trial court erred by reviewing this case as a petition for grandparent visitation instead of a motion to modify grandparent visitation. Given the specific record before us on appeal, we conclude that the trial court did not err by ruling on this case as a petition for grandparent visitation and by denying Grandmother's petition.

We affirm.

## ISSUE

Whether the trial court erred by denying Grandmother's petition for grandparent visitation.

2

Mother has two children—A.J.M.D., born in September 2009, and B.R.M.D., born in August 2011—born out-of-wedlock with G.M. ("Father"). At some point prior to the final hearing in this case, Father established paternity of the Children.

In January 2013, Father "walked away" from the Children and no longer had any contact with them. (Tr. 5). Prior to January 2013, Grandmother had seen the Children "a few times" when Father had visitation with them. (Tr. 5). After Father stopped his contact with the Children, Grandmother contacted Mother to ask for visitation with the Children, but Mother refused because of safety concerns (i.e., Mother was concerned because Grandmother had previously drunk alcohol around the Children and had once taken A.J.M.D. out of his car seat and held him while Grandmother's boyfriend was driving the car on the highway).

On April 1, 2013, Grandmother filed a petition for grandparent visitation. In her petition, Grandmother stated that there was "currently a paternity matter" pending in the circuit court. (App. 7). Grandmother also filed a motion for a change of judge, and a special judge from an adjoining county was then appointed.

Thereafter, the trial court held a hearing on July 12, 2013. Grandmother did not request transcription of this hearing for this appeal; thus, the transcript from that July 2013 hearing is not part of the record on appeal. The parties apparently entered into an agreement for Grandmother to have a "trial period" of grandparent visitation pending a final review hearing, which was scheduled for September 13, 2013. (App. 12). The trial court set forth the parties' terms of the visitation agreement in an agreed order.

Specifically, the parties agreed that Grandmother would have supervised visitation with the Children, consisting of: (1) two hours of visitation each Saturday in July at a park with that visitation to be supervised by Mother and Grandmother's parents ("Great Grandparents"); and (2) four hours of visitation each Saturday during August until the final review hearing date with the visitation to be supervised by Great Grandparents. Furthermore, as part of the agreed order, the parties agreed that they would be "cordial to each other," and Grandmother agreed that there would be "no drinking alcohol during the visitation times" and "no swearing or fighting in front of the children[,]" and that she would have "proper car seats in her vehicle[.]" (App. 9).

Thereafter, Mother supervised Grandmother's July visitations with the Children, and these visitations were without issue. However, during the time period that Grandmother was allowed to have supervised visitation with the Children outside of Mother's presence, Grandmother allowed three-year-old A.J.M.D to be placed on the roof of a shelter and also allowed him to ride on the back of a four-wheeler without a helmet. Grandmother then posted photos of these two incidents on Facebook.

"[A]lmost every weekend" after vising with Grandmother, A.J.M.D. would say curse words, including "the 'F' word[,]" "'damnit[,]'" and "the 'P' word." (Tr. 47, 49). After one of Grandmother's visits with the Children, A.J.M.D said to Mother, "'Mom, look at my fucking hat. Look at my fucking hat.'" (Tr. 48).

After two scheduling delays, the trial court held the review hearing on November 25, 2013. During the hearing, Grandmother did not present any evidence challenging Mother's fitness. In fact, Grandmother's mother ("Great Grandmother") testified that

4

Mother was a "good mommy." (Tr. 39). Grandmother generally testified that her visitation with the Children had gone well and that she wanted it to continue and to have overnight visits.

On cross-examination, Mother's counsel asked Grandmother about the Children being exposed to cursing and about Mother's concerns for the Children's safety while with Grandmother. Grandmother testified that she had "absolutely no clue" where the Children would have picked up curse words and testified that she did not use "foul language" in front of the Children. (Tr. 26). Grandmother then testified that she may have said "'shit,' 'damn,' or 'ass,' but not . . . not beating asses or anything like that." (Tr. 27). When asked about the incident where A.J.M.D. was allowed to sit on top of a roof, Grandmother testified that she was "not the only parent or grandparent that's ever done something like that" and then shifted the blame to her ex-husband for putting him on the roof. (Tr. 29). When asked about letting A.J.M.D. ride on a four-wheeler without a helmet, Grandmother testified that her fourteen-year-old son was driving it in her yard and was only going about five miles per hour.

Mother testified that the visitation that had occurred in July—when Mother was able to supervise the visitation—had been "fine." (Tr. 56). Mother testified that she did not want Grandmother to have unsupervised visitation with the Children because of her concern of the Children being exposed to curse words and because she did not feel that the Children were safe with Grandmother.

On December 23, 2013, the trial court entered the following order denying Grandmother's petition for grandparent visitation:

5

1.  Under Indiana law it is presumed that a fit parent's decision about grandparent visitation is in the child's best interest. Respondent [Mother] is a fit parent who has decided that it is not in the best interests of her children to have visitation with their paternal grandmother. Petitioner [Grandmother] has the burden of proving that grandparent visitation is in the children's best interest and she must do so by a heightened standard of proof.

2.  Petitioner [Grandmother] had little contact with the children until July of 2013. On July 16, 2013, an Agreed Order was entered herein providing for a trial period of grandparent visitation pending final hearing herein. The children, A.J.M.D. . . . and B.R.M.D. . . . have visited with [Grandmother] on a weekly basis since the entry of said Agreed Order. Said visitation has, by the agreement of the parties, been supervised by the children's paternal great grandparents.

3.  Visitation over the last four months has gone well in the opinion of the [Grandmother]. The children do not hesitate to go for visitation and the oldest child calls the Petitioner grandma. As the children's paternal great grandmother observed, the children get along great with the [Grandmother].

4.  Visitation has not gone well in the opinion of the [Mother]. The oldest child comes home from visitation using curse words that are not used in [Mother's] home; the oldest child was allowed to sit on the roof of a shelter house on one occasion; and the oldest boy was allowed to ride on the back of a 4-wheeler without a helmet. Furthermore, this is not a case where a relationship between the grandmother and the children has developed over a substantial period of time. Given the above, [Grandmother] has failed to rebut the presumption that [Mother's] decision to deny visitation is in the children's best interests and has not established that visitation is in the children's best interests.

5.  [Mother] testified that she would prefer that the children have no visitation with [Grandmother]. The Court gives some weight to the fact that this most probably will result in there being no relationship between the children and [Grandmother]. This factor, however, does not outweigh the special weight that must be given to a fit parent's decision regarding non-parental visitation.

(App. 11-13). Grandmother now appeals.

6

Grandmother challenges the trial court's denial of her petition for grandparent visitation under the Grandparent Visitation Act. *See* IND. CODE §§ 31-17-5-1 through -10.

"Historically, grandparents had no special common-law right to visitation with their grandchildren." *In re Guardianship of A.J.A.*, 991 N.E.2d 110, 112 (Ind. 2013) (citing *In re Visitation of M.L.B.*, 983 N.E.2d 583, 585 (Ind. 2013)). "[G]randparents do not have the legal rights or obligations of parents and do not possess a constitutional liberty interest with their grandchildren[.]" *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 462 (Ind. 2009). Instead, "[t]he Courts had previously thought any grandparent visitation policy should be a 'legislative, not judicial' function." *Id.* (quoting *Collins v. Gilbreath,* 403 N.E.2d 921, 923-24 (Ind. Ct. App. 1980)). The Grandparent Visitation Act "represents a Legislative recognition that 'a child's best interest is often served by developing and maintaining contact with his or her grandparents.'" *K.I.*, 903 N.E.2d at 462 (quoting *Swartz v. Swartz*, 720 N.E.2d 1219, 1221 (Ind. Ct. App. 1999)). "Thus, in drafting the Act, the Legislature balanced two competing interests: 'the rights of the parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren.'" *Id.* (quoting *Swartz*, 720 N.E.2d at 1222).

Pursuant to INDIANA CODE § 31-17-5-1 of the Grandparent Visitation Act, a grandparent may seek visitation only if: (1) the child's parent is deceased; (2) the child's parents are divorced; or (3) the child was born out of wedlock and the child's father has established paternity. I.C. § 31–17–5–1. A trial court may grant grandparent visitation

rights upon a determination that it would be "in the best interests of the child." I.C. § 31–17–5–2(a). When evaluating a child's best interests, the trial court "may consider whether a grandparent has had or has attempted to have meaningful contact with the child." I.C. § 31–17–5–2(b). "However, 'this consideration is not the touchstone for determining the child's best interests.'" *McCune v. Frey*, 783 N.E.2d 752, 757 n.4 (Ind. Ct. App. 2003) (quoting *Woodruff v. Klein*, 762 N.E.2d 223, 228 (Ind. Ct. App. 2002), *trans. denied*).

"[N]atural parents have a fundamental constitutional right to direct their children's upbringing without undue governmental interference, and . . . a child's best interests do not necessarily override that parental right." *In re Visitation of M.L.B.*, 983 N.E.2d 583, 585-86 (Ind. 2013) (citing *Troxel v. Granville*, 530 U.S. 57 (2000)). As our Indiana Supreme Court recently explained:

> In striking a balance between parental rights and children's interests, the *Troxel* plurality discussed several key principles . . . which our Court of Appeals soon distilled into four factors that a grandparent-visitation order "should address":
>
> (1) a presumption that a fit parent's decision about grandparent visitation is in the child's best interests (thus placing the *burden* of proof on the petitioning grandparents);
>
> (2) the "special weight" that must therefore be given to a fit parent's decision regarding nonparental visitation (thus establishing a heightened *standard* of proof by which a grandparent must rebut the presumption);
>
> (3) "some weight" given to whether a parent has agreed to some visitation or denied it entirely (since a denial means the very *existence* of a child-grandparent relationship is at stake, while the question otherwise is merely *how much* visitation is appropriate); and

8

(4) whether the petitioning grandparent has established that visitation is in the child's best interests.

*Id.* (citing *McCune*, 783 N.E.2d at 757-59) (emphasis in original). Our Indiana Supreme Court, in *K.I.*, approved the four factors set forth in *McCune* and clarified that a grandparent visitation order "*must* address" those factors in its findings and conclusions. *M.L.B.*, 983 N.E.2d at 586 (quoting *K.I.*, 903 N.E.2d at 462). The *K.I.* Court "further explained that the Grandparent Visitation Act contemplates only occasional, temporary visitation that does not substantially infringe on a parent's fundamental right to control the upbringing, education, and religious training of their children." *Id.* (internal quotations and citations omitted).

Whenever a trial court enters an order on a petition filed under the Grandparent Visitation Act, the trial court is required to issue specific findings and conclusions in its decree. I.C. § 31-17-5-6. Accordingly, we apply the two-tiered standard of review set forth in Indiana Trial Rule 52(A). *M.L.B.*, 983 N.E.2d at 585. First, we must consider whether the evidence supports the findings; second, we determine whether those findings support the judgment. *Id.* We do not reweigh evidence or assess the credibility of witnesses, and we consider the evidence and all reasonable inferences in favor of the trial court's judgment. *Megyese v. Woods*, 808 N.E.2d 1208, 1213 (Ind. Ct. App. 2004). We will "not set aside the findings or judgment unless clearly erroneous." Ind. Trial Rule 52(A). Regarding the factual findings, we "defer[] to the trial court's superior opportunity 'to judge the credibility of the witnesses.'" *M.L.B.*, 983 N.E.2d at 585 (quoting *K.I.*, 903 N.E.2d at 457). We will find the judgment to be clearly erroneous if

"'the findings fail to support the judgment'" or if "'the trial court applies the wrong legal standard to properly found facts.'" *M.L.B.*, 983 N.E.2d at 585 (quoting *K.I.*, 903 N.E.2d at 457). "Further, we give substantial deference to trial courts in family law matters." *Wilder-Newland v. Kessinger*, 967 N.E.2d 558, 560 (Ind. Ct. App. 2012), *trans. denied*. Here, Grandmother appeals a negative judgment and, as a result, she must show that the evidence points unerringly to a conclusion different from that reached by the trier of fact, or that the judgment is contrary to law. *Id.* "This means that even if we might have taken a different course of action than that which a trial court took, we are bound to review the order, and findings and conclusions, for clear error only."

On appeal, both parties agree that the trial court discussed the *McCune* factors when entering its order on grandparent visitation in this case. Grandmother, however, argues that the trial court's order denying her petition for grandparent visitation should be reversed because the trial court applied "the wrong legal standard." (Grandmother's Br. 9). Specifically, Grandmother asserts that the trial court erred by deciding the case before it as a petition for grandparent visitation instead of a motion to modify grandparent visitation. Grandmother contends that the July 2013 agreed order was a final order on her grandparent visitation petition that established her "**right** to grandparent visitation." (Grandmother's Br. 10) (emphasis in original). She argues that because she had already established her right to visitation, then the trial court should not have applied the legal standard for establishing grandparent visitation under INDIANA CODE § 31-17-5-2, discussed the *McCune* factors, or placed the burden on her to meet the heightened standard of proof of overcoming the presumption in favor of Mother as a fit parent.

10

(Grandmother's Br. 10). Instead, she asserts that the trial court should have put the burden on Mother to show that Grandmother's visitation rights should have been modified. Grandmother contends that we should remand this case to the trial court "to reweigh the evidence and determine whether Mother met her burden to modify and terminate visitation." (Grandmother's Br. 11).

Mother disputes Grandmother's contention that the trial court should have treated this case as a petition to modify grandparent visitation and argues that the July 2013 order was not a final order on Grandmother's grandparent visitation petition. Mother asserts that the trial court applied the correct standard of review and "correctly addressed all of the factors prescribed by [the] Indiana Supreme Court in determining whether Grand[mother's] visitation [was] appropriate under **IC 31-17-5**." (Mother's Br. 5) (emphasis in original). In other words, Mother contends that the trial court properly addressed the *McCune* factors and placed the burden on Grandmother to show that visitation was in the best interests of the Children.

Given the record before us on appeal, we agree that the trial court properly ruled on this case as a petition for grandparent visitation. The proceeding commenced upon Grandmother's filing of a petition for grandparent visitation. At a hearing, the parties came to an agreement that the trial court then entered as an agreed order. As previously mentioned, we do not have the transcript of that hearing because Grandmother did not request that it be transcribed. Nevertheless, the record that is before us reveals that the parties agreed that Grandmother could have supervised visitation, and the record shows that the visitation was a trial period pending the final hearing on Grandmother's petition.

11

Essentially, it appears that the agreed order was some sort of agreed provisional order for visitation pending the hearing.[1]  Additionally, when the trial court issued its order in this action, it discussed the *McCune* factors, which our Indiana Supreme Court has instructed must be discussed when entering an order granting or denying grandparent visitation. Thus, a review of the record as a whole and the specific facts contained therein indicate that the November 2013 hearing was a hearing on Grandmother's grandparent visitation petition in which she had the burden to show that visitation was in the Children's best interests.

Grandmother makes no argument that she met the burden of showing that grandparent visitation was in the best interests of the Children or that Mother was an unfit parent.  Indeed, as the trial court's order indicates, Grandmother did not have meaningful contact with the Children prior to July 2013 when Mother agreed to let Grandmother have supervised visitation pending the final hearing.  In addition, Grandmother neither satisfied her heightened standard of proof to rebut the presumption that Mother's decision about grandparent visitation was in the Children's best interests nor met her burden to prove that visitation was in the Children's best interests.  Because Grandmother has not shown that the evidence points unerringly to a conclusion different from that reached by the trier of fact, we affirm the trial court's order denying Grandmother's petition for grandparent visitation.  *See, e.g.*, *Wilder-Newland*, 967 N.E.2d at 562 (holding that a

---

[1] While the Grandparent Visitation Act does not contain an explicit provision allowing for the entry of a provisional visitation order, the parties may certainly stipulate to such.  *See Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind. Ct. App. 1997) (providing that parties can stipulate to provisional grandparent visitation but cannot thereafter claim any error in the entry of such a provisional order).

12

grandmother's failure to carry her burden of proof that grandparent visitation was in the best interest of the children was "sufficient reason to uphold the order denying visitation"); *Woodruff*, 762 N.E.2d at 228 (affirming the denial of a grandmother's petition for grandparent visitation where the grandmother failed to present any evidence to rebut presumption of a fit parent).

Affirmed.[2]

NAJAM, J., and BAILEY, J., concur.

---

[2] When the parties discuss the alternative argument about whether this case should have been treated as a modification action, the parties dispute who would carry the burden of proof if this case were a petition for modification of grandparent visitation under INDIANA CODE § 31-17-5-7 and whether a discussion of the *McCune* factors are required in a modification action. Because we conclude that the trial court properly treated this cause as a petition for grandparent visitation under INDIANA CODE § 31-17-5-2, we save for another day the discussion of the allocation of burden in a grandparent visitation modification action. *See Reed v. State*, 796 N.E.2d 771, 775 (Ind. Ct. App. 2003) ("This court does not render advisory opinions.").